UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
TRAVEL LEADERS GROUP HOLDINGS, LLC
& ALTOUR HOLDINGS, LLC,

                    Plaintiffs,            No. 24 CV 1208 (LAP)

    -against-                                        ORDER

ANTHONY LEE THOMAS,

                    Defendant.
```

LORETTA A. PRESKA, Senior United States District Judge:

    The Court is in receipt of the parties' joint letter [dkt. no. 39] regarding the scope of a proposed protective order.  The parties agree that Plaintiffs' in-house counsel, Ms. Daras, will receive access to discovery marked non-confidential and confidential, but they dispute whether she should receive access to discovery designated as "highly confidential."  As explained below, Ms. Daras shall receive access to highly confidential information other than Nous' financial records and arrangements.

    Federal Rule of Civil Procedure 26 provides that a court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).  Disclosure of confidential information on an "attorneys' eyes only" basis "is a routine feature of civil litigation involving trade secrets."  In re City of N.Y., 607 F.3d 923, 935 (2d Cir. 2010).

In-house counsel may not be denied access to confidential information solely because of her status as in-house counsel. U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984). Nor should in-house counsel be permitted such access solely because she is bound by the rules of professional responsibility. Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc., No. 93 Civ. 6350 (PKL), 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (citing Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24, 27 (E.D. Pa. 1990)).

Instead, courts apply a two-step analysis to determine on an individualized basis whether in-house counsel "has a part in the type of competitive decision-making that would involve the potential use of confidential information." Id. (citations omitted). The first step is to examine whether in-house counsel is involved in "competitive decisionmaking," which courts have held to mean "a counsel's activities, association, and relationship with a client that . . . involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd., 311 F.R.D. 80, 83 (S.D.N.Y. 2015) (quoting U.S. Steel Corp., 730 F.2d at 1468 n.3). This inquiry tests the risk of inadvertent disclosure of confidential information. Id. (acknowledging the difficulty for the human mind

2

to compartmentalize and suppress information once learned). Once determined, the second step is to balance the risk of inadvertent disclosure against the requesting party's need for such information. See Rodo Inc. v. Guimaraes, No. 22 Civ. 9736 (VSB), 2022 WL 17974911, at *1 (S.D.N.Y. Dec. 27, 2022); Koninklijke Philips N.V., 311 F.R.D. at 84.

Here, the parties dispute whether Ms. Daras, who is General Counsel for Internova Travel Group and a member of the New York Bar, should receive access to discovery designated as "highly confidential." Ms. Daras oversees all legal matters across Internova — a global travel services company with 6,000 locations, representing 100,000 travel advisors, and a presence in more than 80 countries. Plaintiffs represent that Ms. Daras is not involved in competitive decisionmaking as she "does not manage business functions for Internova, nor does she participate in strategy for Altour or Internova concerning pricing, markets, customers, etc." (Dkt. no. 39 at 2.)

Notwithstanding Plaintiffs' representation, Defendant argues that Ms. Daras' position as General Counsel "for all of Internova (not merely Altour)" creates a heightened risk of inadvertent disclosure. (See id. at 4.) Based on this perceived risk alone, Defendant proposes that Plaintiffs be required to show, on a case-by-case basis, why it is necessary for Ms. Daras to view highly confidential information. (Id. at 4-5.) That is, Defendant

3

seeks to impose a greater burden on Ms. Daras based on her status as in-house counsel, in contravention of the rule articulated in U.S. Steel Corporation.  See 730 F.2d at 1468-69.

Defendant also argues that not only is there a risk of inadvertent disclosure, but there is a risk of "commercial espionage."  (Dkt. no. 39 at 4.)  Defendant's position on this point is somewhat puzzling for two reasons.  Defendant portrays Plaintiffs as abusing the judicial system to acquire valuable, non-public information about its competitor's operations.  In the same breath, though, Defendant describes Nous as a "fledgling" company that is "just three months old with fewer than ten employees and no contracts with any trip advisors."  (Id. at 3-4.)  If Nous has yet to establish its commercial footing as Defendant depicts, then a possibility of commercial espionage seems remote.[1]

---

[1] Moreover, Defendant misstates the facts and holding of Quotron Systems, Inc. v. Automatic Data Processing, Inc., 141 F.R.D. 37 (S.D.N.Y. 1992).  He asserts that the court "denied plaintiff's request for its in-house counsel to access 'highly confidential' information . . . because of the risk that the litigation is being used for 'commercial espionage.'"  (Dkt. no. 39 at 4.)  To the contrary, Quotron had proposed the disclosure of confidential information to no more than three employees "in addition to outside counsel and in-house counsel preparing for the trial of this action . . . ."  Quotron Sys., Inc., 141 F.R.D. at 39 (emphasis added).  Quotron orally withdrew its request that the three employees be permitted access to highly confidential information due to concerns over espionage.  Id. at 40.  The court then determined that ADP had overclassified documents as "highly confidential," ordered ADP to reclassify the materials, and left the door open to Quotron to renew its motion for a protective order following reclassification.  Id.

4

Moreover, Defendant's portrayal fails to explain why Ms. Daras would be willing to jeopardize her career, license, and reputation to disseminate highly confidential information. In lieu of any evidence, Defendant offers no more than theories and speculation in objection. Based on the record before the Court, it appears that Ms. Daras fulfills a legal role within Internova and she is not involved in competitive decisionmaking. Accordingly, the risk of inadvertent disclosure is minimal.

Balancing the relevant factors, the Court finds that Plaintiffs would be prejudiced if Ms. Daras were denied access to all highly confidential information. Plaintiffs propose limiting access to highly confidential information to only one member of Internova's in-house counsel — Ms. Daras or any successor to her role. (See dkt. no. 39-1 ¶¶ 8-9.) As such, she is the lone liaison between external counsel and Internova. Ms. Daras will also play an active role in the day-to-day demands of the case, including the development of case strategy. (Dkt. no. 39 at 2.) Given the breadth of categories defined as "highly confidential," denying Ms. Daras access would stymy her ability to consider information relevant to the formulation of case strategy and the facilitation of settlement discussions, and it would impose an unreasonable burden on Internova and its counsel.

Still, the Court considers the types of information to be marked highly confidential and observes that Ms. Daras can likely

5

perform her role without access to Nous' financial records and arrangements. Disclosure of such financial information of Nous would seemingly have little to no impact on Plaintiffs' prosecution of the case but would create a risk of harm to Nous.

Accordingly, the Court finds that Ms. Daras, or any successor to her role, should receive access to highly confidential information other than Nous' financial records and arrangements, and such information may be redacted. Should an occasion arise where Plaintiffs' counsel believes some accommodation is necessary to afford Ms. Daras access to specific financial information, Plaintiffs' counsel is directed to confer in good faith with Defendant's counsel and, if still necessary, apply to the Court for further relief.

**SO ORDERED.**

Dated:   May 8, 2024
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge